**Salem**

VERLIN R. PARRIS

v.

APPALACHIAN POWER COMPANY

No. 0691-85

Decided May 6, 1986

220

COUNSEL

Robert A. Vinyard, for appellant.

William B. Poff (James W. Jennings, Jr.; D. Stan Barnhill; Woods, Rogers & Hazelgrove, on brief), for appellee.

OPINION

KOONTZ, C.J.—Verlin R. Parris (Parris) appeals from an Industrial Commission decision which held that his claim for benefits due to occupational related asbestosis was barred. The Commission determined that Appalachian Power Company (Appalachian) had acquired a vested right in a prior final adjudication. We affirm on other grounds.

Parris was employed by Appalachian for over thirty years. For twenty-five of those years, Parris' job consisted of maintenance work on Appalachian's fleet of motor vehicles. His duties included changing and cleaning clutches and brakes, many of which were made from asbestos. Parris retired on October 22, 1975.

Parris received a diagnosis of asbestosis in June of 1981. Based on this diagnosis, he filed a claim with the Commission in August

of that year. The deputy commissioner, by decision dated February 19, 1982, held that Parris failed to show a causal relation between his lung condition and the conditions of his work place, and further noted that Parris' lung condition could have been caused by cigarette smoking alone. Parris appealed to the full Commission. On April 13, 1982, the Commission affirmed the deputy's decision due to lack of evidence in Parris' favor. In addition, the Commission held that the claim was barred by the five year provision of the statute of limitations which was then contained in Code § 65.1-52.[1] Subsequently, the Supreme Court refused to hear Parris' petition for appeal.

Effective July 1, 1983, Code § 65.1-52 was amended.[2] The prior statute required the filing of a claim within five years from the date of the last employment, or within two years after a diagnosis of an occupational disease was first communicated to the employee, whichever occurred first. The new statute removed the five year provision and merely requires filing within two years after a diagnosis of asbestosis is first communicated to the employee. The

[1] The pre-July 1, 1983, Code § 65.1-52 provided in pertinent part:

§ 65.1-52. Limitation upon claim; "injurious exposure" defined; diseases covered by limitation.—The right to compensation under this chapter shall be forever barred unless a claim be filed with the Industrial Commission within three years for coal worker's pneumoconiosis and two years for all other occupational diseases after a diagnosis of an occupational disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs; and, if death results from the occupational disease within either of said periods, unless a claim therefor be filed with the Commission within three years after such death. The limitations imposed by this section as amended shall be applicable to occupational diseases contracted before and after July one, nineteen hundred sixty-two, and § 65.1-87 shall not apply to pneumoconiosis.

[2] Effective July 1, 1983, Code § 65.1-52 provides in pertinent part:

§ 65.1-52. Limitation upon claim; "injurious exposure" defined; diseases covered by limitation.—The right to compensation under this chapter shall be forever barred unless a claim be filed with the Industrial Commission within one of the following time periods:

1. For coal miners' pneumoconiosis, three years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs;

2. For byssinosis, two years after a diagnosis of the disease is first communicated to the employee or within seven years from the date of the last injurious exposure in employment, whichever first occurs;

2a. For asbestosis, two years after a diagnosis of the disease is first communicated to the employee;

3. For all other occupational diseases, two years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs.

deletion of the five year limitation recognized that asbestosis is a progressive disease which may manifest itself many years after the cessation of employment and beyond the five year period.

In the latter half of 1983, Parris was seen by Dr. Joseph Smiddy. Dr. Smiddy made an unequivocal finding that Parris was suffering from asbestosis as a result of his work history. A claim based on Dr. Smiddy's report was filed on October 11, 1983. In a hearing before the deputy commissioner, Parris asked for benefits under Code § 65.1-54, compensation for total incapacity. The deputy commissioner found for Parris, and ordered that temporary total incapacity benefits be paid. Appalachian appealed to the full Commission. The Commission remanded the case to the deputy commissioner to determine the stage of Parris' disease under Code § 65.1-56(20). X-rays were then submitted to and read by numerous doctors. Thereafter, the deputy commissioner awarded Parris first stage asbestosis benefits. Appalachian again appealed to the full Commission. The Commission found that the evidence preponderated in proving that Parris had contracted occupational asbestosis from his exposure to asbestos during his long employment with Appalachian and that Parris had first stage asbestosis as delineated in Code § 65.1-56(20)(a). However, the Commission reversed the deputy commissioner on the ground that "the parties' rights with respect to the issue of limitation of action have been finally adjudicated and the claimant was held to be barred. The right to a final determination was vested in the employer." The Commission stated that had the case (first claim by Parris in 1981) not been denied on the ground of limitation of action, the amended statute (Code § 65.1-52) would apply. Parris appeals from this decision.

The parties present four issues which merit our consideration:

(1) Does the doctrine of *res judicata* prohibit Parris from litigating the causation issue in this case?
(2) Is Parris barred from bringing the instant claim under the post-July 1, 1983, version of Code §65.1-52?
(3) Is Parris' October 1983 claim barred because of the prior adjudication that the statute of limitations had run on Parris' 1981 claim?
(4) Aside from the prior judgment in Appalachian's favor, did Appalachian acquire a vested right in the running

of the limitation period contained in the pre-July 1, 1983, version of Code § 65.1-52?

The holdings in four prior cases are crucial to our determination and, therefore, we review them in some detail at this point.

In *Anderson* v. *Clinchfield Coal Co.*, 214 Va. 674, 204 S.E.2d 257 (1974), Anderson first received a communication of occupational pneumoconiosis from his family physician on October 22, 1966. Subsequent visits to other physicians did not result in a concurrence in the family physician's diagnosis. A return visit to the family physician resulted in a second diagnosis of occupational pneumoconiosis. Anderson did not file a claim, however, until March 20, 1972, basing the claim on a third diagnosis made by the family physician on September 14, 1971. Examinations by other physicians confirmed the 1971 diagnosis.

The Commission dismissed Anderson's claim for lack of jurisdiction, and the Supreme Court affirmed. The applicable statute of limitations required a claim to be filed within one year after a diagnosis of the occupational disease was first communicated to the employee. Anderson, having first received a diagnosis in 1966, was required to file a claim within one year of that diagnosis. Having not done so, his 1972 claim was appropriately dismissed. It mattered not whether the evidence in regard to the 1966 diagnosis was in such conflict that any claim based on that diagnosis would have been dismissed. That was a matter for the Commission, not Anderson, to determine.

In *Cook* v. *Clinchfield Coal Co.*, 215 Va. 599, 212 S.E.2d 263 (1975), Cook first received a diagnosis of occupational pneumoconiosis in 1968. He timely filed a claim based on that diagnosis. This 1968 claim was dismissed "because the medical evidence did not prove the existence of an occupational disease." *Id.* at 600, 212 S.E.2d at 264. In 1973, Cook received another diagnosis of occupational pneumoconiosis, and timely filed a claim. The Supreme Court, in reversing the Commission, held that Cook was not barred from filing his 1973 claim. The Court stated that:

The record shows that claimant's 1968 application was dismissed by the deputy commissioner because the medical evidence at the hearing before him failed to disclose the exis-

tence of any occupational disease. Since claimant could not prove his 1968 claim by medical evidence before the deputy commissioner, he was not barred from filing his second claim when he obtained a positive diagnosis on June 13, 1973, that he had pneumoconiosis.

*Id.*

*Hale* v. *Clinchfield Coal Co.*, 59 O.I.C. 112 (1981), centered on the question of compensability of a claim based on a diagnosis of an occupational disease. Hale received a diagnosis of employment-related hearing loss on May 10, 1975, and timely filed a claim on that basis. The Commission, applying a table for rating hearing loss, concluded that Hale's hearing loss was so minor at that point that it was not included on the table to the extent that it would be compensable. In 1980, Hale received a second diagnosis of occupational hearing loss which had become more severe at that time. The Commission entered an award for Hale, finding that his 1980 claim was not barred because the evidence relating to the 1975 claim did not show a *compensable* hearing loss at that time. The Commission held "that the Statute of Limitations did not commence to run against [the 1980] claim until the date of diagnosis and communication of a compensable occupational disease, on April 7, 1980." *Id.* at 113.

In *Kiser* v. *Clinchfield Coal Co.*, 225 Va. 357, 302 S.E.2d 44 (1983), the Commission and the Supreme Court were confronted with a factual situation similar to that in *Anderson* v. *Clinchfield Coal Co.* In the early 1970's Kiser was seen by a physician who communicated a diagnosis of coal worker's pneumoconiosis, but told Kiser that the disease had not yet reached "the compensable" stage. As a result, Kiser failed to act on this diagnosis. In 1981, he again received a diagnosis of pneumoconiosis, and filed a claim on that basis. The Supreme Court, citing *Anderson*, held that Kiser's 1981 claim was barred. The Court stated that "[t]he question of compensability was for the Commission to decide, not the claimant or his physician." *Kiser*, 225 Va. at 360, 302 S.E.2d at 45.

The Court distinguished *Kiser* from *Hale* v. *Clinchfield Coal Co.* as follows: "The April 7, 1980 diagnosis in *Hale* was of a compensable hearing loss. In addition, Hale earlier had received a 1975 diagnosis of minimal hearing loss and had filed a timely claim, which the Commission ruled in 1978 was noncompensable.

*Kiser should have followed the same course here." Kiser,* 225 Va. at 360, 302 S.E.2d at 46. (emphasis added).

It is necessary to reconcile the holdings in these four cases before addressing the issues in the instant case. *Cook* makes it clear that if an employee receives a communication of a diagnosis of an occupational disease, timely files a claim on that basis, and loses because the evidence does not show the existence of an occupational disease, then he is *not* barred from filing a second claim after receiving a second diagnosis. In contrast, *Anderson* holds that if an employee receives a communication of a diagnosis of an occupational disease, and does not act on that communication prior to the running of the statute of limitations, then he is barred from filing a later claim based on a later diagnosis.

In a similar vein, the issue of the compensability of an occupational disease must be determined by the Commission, not the claimant or his physician. In *Hale,* the issue in regard to Hale's first claim was not whether he had an occupational disease, but whether that occupational disease was compensable. The Commission determined that his hearing loss was so minor at that point that it was not ratable for compensation purposes. This determination did not bar Hale from filing and receiving an award on a second claim based on a later diagnosis.

Although the Supreme Court did not review *Hale,* it later noted approval of the Commission's holding in *Hale.* In *Kiser,* the Court ruled that Kiser was barred from proceeding on his second claim when he failed to act on an earlier diagnosis because he concluded that his occupational disease had not yet reached the compensable stage. The Court, taking note of the actions of the claimant in *Hale,* stated that "Kiser should have followed the same course here." *Kiser,* 225 Va. 360, 302 S.E.2d at 46. Thus, the Court implicitly recognized the viability of a second claim based on a second diagnosis if the claimant acts in accordance with *Hale.*

The rule of law which can be discerned from these four cases is that once an employee receives a communication of an occupational disease,[3] it it incumbent upon that employee to file a claim.

---

[3] When an employee places himself in the care of a physician, he is chargeable only with advice given by the physician. If the employee "is not advised of the occupational nature of his disease . . ., he should not be encouraged to overrule his physician and file a

Once a claim is filed, it is the duty of the Commission to determine: (1) whether the disease is in fact an "occupational disease" as defined in Code § 65.1-46,[4] and if so, (2) whether that occupational disease is compensable.[5] If the Commission determines that the claimant does not have an occupational disease, or that his occupational disease is not compensable, then the statute of limitations in regard to the first communication of the diagnosis forming the basis of that claim has no bearing on a subsequent diagnosis and a claim filed as a result of the communication of that diagnosis.

## I.

■ Appalachian contends that the doctrine of *res judicata* prohibits Parris from litigating the causation issue here. Appalachian quotes the following language:

When the second suit is between the same parties as the first, and *on the same cause of action*, the judgment in the former is conclusive in the latter, not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings, or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered.

*Pickeral* v. *Federal Land Bank*, 177 Va. 743, 749, 15 S.E.2d 82, 84 (1941) (quoting *Choate* v. *Calhoun*, 153 Va. 52, 55, 149 S.E. 470, 471 (1929)) (emphasis added).

The authority cited by Appalachian is the basis on which we reject Appalachian's *res judicata* argument. While it is true, of course, that this doctrine may operate to bar a second or subsequent claim, this is so only when the second or subsequent claim is based "on the same cause of action." Parris' 1983 claim was not

claim for a compensable disease anyway." *Clifton* v. *Jewell Ridge Coal Co.*, 37 O.I.C. 151, 162 (1955).

    [4]  Code § 65.1-46 defines "occupational disease" as "a disease arising out of and in the course of the employment."

    [5]  An occupational disease is not per se compensable. *Long* v. *West Va. Pulp & Paper Co.*, 46 O.I.C. 140, 141 (1964).

based "on the same cause of action" as his 1981 claim. In 1983, Parris received a communication of a second diagnosis of asbestosis, and filed a claim based on *that* communication, not the 1981 communication. *Cook* held that once the Commission determines that an employee, pursuing a properly filed claim, does not have an occupational disease, then the claimant is not barred from pursuing a subsequent claim after receiving a communication of a second diagnosis. Cook's first claim was dismissed "because the medical evidence did not prove the existence of an occupational disease." *Cook*, 215 Va. 600, 212 S.E.2d at 264. Parris' first claim was dismissed because he failed to show a causal connection between his lung condition and his employment. Therefore, Parris' first claim, like Cook's, was dismissed because the evidence did not show the existence of an "occupational disease" as defined in Code § 65.1-46. Specifically, the evidence failed to show that Parris' condition "ar[ose] out of and in the course of the employment." Since the medical evidence in support of Parris' first claim did not establish the existence of an occupational disease, Parris is not barred by the doctrine of *res judicata* from pursuing a second claim based on different medical evidence (i.e., the communication of a second diagnosis establishing an occupational disease).

## II.

Appalachian also urges us to hold that the July 1, 1983, version of Code § 65.1-52 bars Parris from bringing his 1983 claim. We reject this argument.

In accordance with the rule of law previously described, we hold that the Commission determined that Parris' 1981 claim did not show the existence of an occupational disease and, therefore, the statute of limitations applicable to the communication of the 1981 diagnosis forming the basis of the 1981 claim has no bearing on the instant claim. The two year statute of limitations begins to run after a diagnosis of asbestosis (an occupational disease) is first communicated to the employee. The diagnosis *must* be of an "occupational disease." Since the evidence in reference to Parris' 1981 diagnosis failed to show the existence of an "occupational disease," the 1981 diagnosis has no bearing on the statute of limitations question.

### III.

The Commission ruled that Parris' current claim was barred because "the parties' rights with respect to the issue of limitation of action *have been finally adjudicated* and the claimant was held to be barred. The right to a final determination was vested in the employer." (emphasis added).

We note that the Commission ruled that Appalachian had acquired a vested right in the prior determination that the statute of limitations served as a bar to Parris' claim. The Commission did *not* rule, and correctly so, that Appalachian acquired a vested right in the prior determination of the nonexistence of an occupational disease so as to bar a subsequent claim based on another diagnosis. The substance of this point has been addressed in Part I of this opinion.

We do not disagree with the result reached by the Commission. The Commission correctly concluded that the statute of limitations barred the 1981 claim and that the 1983 claim likewise was barred. However, as the subsequent discussion demonstrates, it was unnecessary for the Commission to rule that Appalachian had acquired a vested right in the prior adjudication. In particular, the Commission misconstrued controlling principles when it ruled that "had this case not been denied on the ground of limitation of action [in the prior adjudication], the amended statute (§ 65.1-52) would apply." We now turn to the discussion of this issue.

### IV.

We hold that Appalachian acquired a vested right in the running of the limitation period contained in the pre-July 1, 1983, version of Code § 65.1-52. That statute required the filing of a claim within "two years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs."

The date of Parris's last injurious exposure in employment was October 22, 1975. The first claim was not filed until August 1981. As a result, five years had elapsed, and Parris' claim was barred by the statute of limitations. We disagree with the Commission's conclusion that Appalachian was required to *adjudicate* the limi-

tations issue before setting it up as a bar to subsequent claims. The running of the statute, standing alone, is a bar to subsequent claims. This is true even though the limitations period was subsequently amended.

In *Kesterson* v. *Hill*, 101 Va. 739, 45 S.E. 288 (1903), the Court stated:

> it has been held that the right to set up the bar of a statute of limitations as a defense to a cause of action *after the statute has run* is a vested right, *and cannot be taken away by legislation*, either by a repeal of the statute without saving clause, or by an affirmative act; and that it is immaterial whether the action is for the recovery of real or personal property, or for the recovery of a money demand, or for the recovery of damages for a tort.

*Id.* at 743, 45 S.E. at 289. (emphasis added). *See also Hupman* v. *Cook*, 640 F.2d 497 (4th Cir. 1981); *Nicholas* v. *Lynchburg Training School and Hospital*, 44 O.I.C. 198, 200 (1962).

It is true that once the limitations period has run, any subsequent amendments to that period generally would have no effect on the parties' procedural rights. We note, however, that an amendment to a period of limitation that enlarges the period is generally applicable to existing causes of action provided that an action already barred is not revived. *See generally* 51 Am. Jur.2d *Limitation of Actions* §§ 40-41 (1970).

In this light, we hold that Parris was last exposed to asbestos in his employment on October 22, 1975, and accordingly his claim was governed by the limitations period contained in the former Code § 65.1-52. The five year limitations period contained in that statute would dictate that the period would run in October 1980. The amended Code § 65.1-52 did not take effect until July 1, 1983. Thus, Parris could not take advantage of the amendment.

In contrast, had Parris' last injurious exposure to asbestos in his employment occurred within the five years prior to July 1, 1983, he would have been entitled to take full advantage of the amendment since the amendment enlarging the limitation period took effect before the expiration of the limitation period of former Code § 65.1-52.

We are convinced that our holding today accurately reflects not only well settled principles of law, but also the intent of the General Assembly in amending the limitation period in Code § 65.1-52. The General Assembly, in amending the statute, recognized that asbestosis is a progressive disease which may manifest itself many years after the cessation of employment. Although the claimant in the instant case is procedurally barred from succeeding on this claim, our holding today implements the legislative intent of the July 1, 1983, amendment.

*Affirmed.*

Coleman, J., and Moon, J., concurred.