**Salem**

PAUL CHILDRESS

v.

BEATRICE POCAHONTAS COMPANY

No. 0468-87

Decided April 5, 1988

COUNSEL

Stephen A. Vickers (United Mine Workers of America Legal Department, on brief), for appellant.

Thomas R. Scott, Jr. (Street, Street, Street, Scott & Bowman, on brief), for appellee.

OPINION

COLE, J. — Appellant, Paul Childress, appeals the decision of the Industrial Commission holding that his claim for occupational hearing loss benefits was barred by the doctrine of *res judicata*. We agree with the Commission and affirm.

Paul Childress worked in various capacities for Island Creek Coal Company, a subsidiary of Beatrice Pocahontas Company, from 1964 until he was forced to retire in 1983 due to a hip injury. During his nineteen years at Island Creek Coal Company, he worked intermittently in the mines and was continually exposed to loud drilling and blasting. A few years before he retired, he began to experience ringing in his ears and to notice hearing difficulty.

Childress was examined by Dr. Alan L. Desmond on May 23, 1985, and by Dr. Claude H. Crockett, Jr., an otolaryngologist, on June 14, 1985. Childress was found to have a forty-eight decibel loss in his right ear and a forty-six decibel loss in his left ear. After obtaining Childress' noise exposure and medical histories, Dr. Crockett opined that Childress suffered from sensorineural hearing loss occasioned by his long term exposure to noise in his employment. Crockett communicated this diagnosis to Childress that same day.

On June 27, 1985, Childress filed a claim for workers' compensation benefits for an occupational hearing loss. The deputy commissioner held that Childress' hearing loss was noncompensable based on *Belcher v. City of Hampton*, 64 O.I.C. 42 (1985), in which the Industrial Commission held that hearing loss was an ordinary disease of life[1] and therefore noncompensable under Code § 65.1-46. While his claim was pending before the full com-

---

[1] An ordinary disease of life is one to which the general public is exposed outside of the employment. Code § 65.1-46.

mission, this court affirmed the Industrial Commission's decision in *Belcher. See Belcher v. City of Hampton*, 1 Va. App. 312, 338 S.E.2d 654 (1986). Accordingly, the full commission affirmed the dismissal of Childress' claim. Childress did not appeal that dismissal to this court.

Childress was reexamined by Dr. Crockett on July 31, 1986. His findings and the test results were "essentially the same" as those made in May of 1985. On September 9, 1986, Childress refiled a claim for workers' compensation benefits for his hearing loss. The deputy commissioner entered an award for Childress based on the newly enacted Code § 65.1-46.1,[2] effective July 1, 1986, which provides in pertinent part:

An ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease for purposes of this Act if it is established by clear and convincing evidence, to a reasonable medical certainty, that it arose out of and in the course of employment as provided in § 65.1-46 with respect to occupational diseases and did not result from causes outside of the employment, and that:

1. It follows as an incident of occupational disease as defined in this title; or

2. It is an infectious or contagious disease contracted in the course of one's employment in a hospital or sanitarium or public health laboratory or nursing home . . . or in the course of employment as emergency rescue personnel and

---

[2] Code § 65.1-46.1 was enacted in response to the Virginia Supreme Court's decision in *Western Elec. Co. v. Gilliam*, 229 Va. 245, 329 S.E.2d 13 (1985), in which the Court held that an ordinary disease of life to which the general public is exposed outside of the employment is noncompensable under Code § 65.1-46 despite its proven causal connection to the employment and lack of causal connection to factors outside of the employment. *See* Report of the Joint Subcommittee Studying Workers' Compensation, H. Doc. No. 27 (1986). Prior to that time, the Industrial Commission had routinely awarded compensation for ordinary diseases of life where the requirements for compensation of occupational diseases were met, that is, where they were causally connected to the employment. *See, e.g., Hale v. Clinchfield Coal Co.*, 59 O.I.C. 112 (1981); *Mullins v. Clinchfield Coal Co.*, 58 O.I.C. 253 (1978); *Lee v. Norfolk Gen. Hosp.*, 57 O.I.C. 226 (1977).

those volunteer emergency rescue personnel . . .; or

 3. It is characteristic of the employment and was caused
 by conditions peculiar to such employment.

The full commission reversed, however, holding that the doctrine
of *res judicata* barred his subsequent claim. Childress appeals
from this decision, arguing that the doctrine of *res judicata* does
not bar his subsequent claim because it is based on a different
cause of action or accident than the first claim. He relies on *Cook
v. Clinchfield Coal Co.*, 215 Va. 599, 212 S.E.2d 263 (1975) and
*Parris v. Appalachian Power Co.*, 2 Va. App. 219, 343 S.E.2d 455
(1986), in support of this argument.

 In *Cook*, claimant filed an application in 1968 seeking compen-
sation for pneumoconiosis. His claim was dismissed because the
medical evidence did not disclose the existence of any occupa-
tional disease. *Cook*, 215 Va. at 599, 212 S.E.2d at 263-64.
Claimant then filed another application in 1973 seeking compen-
sation for pneumoconiosis diagnosed and communicated to him
that same year. The Virginia Supreme Court held that "[s]ince
claimant could not prove his 1968 claim by medical evidence . . .
he was not barred from filing his second claim when he obtained a
positive diagnosis on June 13, 1973, that he had pneumoconiosis."
*Id.* at 600, 212 S.E.2d at 264.

 In *Parris*, claimant received a communication of a diagnosis of
asbestosis in 1981. He filed a claim with the commission which
was dismissed for failure to show a causal relation between his
lung condition and the conditions of his work place. In 1983,
claimant was again diagnosed as having asbestosis caused by his
employment and he filed a claim based on the 1983 diagnosis. His
employer asserted that the doctrine of *res judicata* prohibited
Parris from relitigating the issue. *Id.* at 220-22, 343 S.E.2d at
456. We held:

 Parris' 1983 claim was not based "on the same cause of
 action" as his 1981 claim. In 1983, Parris received a commu-
 nication of a second diagnosis of asbestosis, and filed a claim
 based on *that* communication, not the 1981 communication.
 *Cook* held that once the commission determines that an em-

ployee, pursuing a properly filed claim, does not have an oc-
cupational disease, then the claimant is not barred from pur-
suing a subsequent claim after receiving a communication of
a second diagnosis. Cook's first claim was dismissed "because
the medical evidence did not prove the existence of an occu-
pational disease." Parris' first claim, like Cook's, was dis-
missed because the evidence did not show the existence of an
"occupational disease" as defined in Code § 65.1-46. . . .
Since the medical evidence in support of Parris' first claim
did not establish the existence of an occupational disease,
Parris is not barred by the doctrine of *res judicata* from pur-
suing a second claim based on different medical evidence (i.e,
the communication of a second diagnosis establishing an oc-
cupational disease).

*Id.* at 226-27, 343 S.E.2d at 459 (emphasis in original) (citations
omitted).

 While the first sentence quoted above seems to suggest that
any subsequent communication of a diagnosis creates a different
cause of action which can be litigated, this is not an accurate in-
terpretation of *Parris*. The quoted paragraph, read as a whole,
provides that where a prior claim is dismissed due to failure of the
medical evidence to disclose the existence of an occupational dis-
ease, *res judicata* does not operate to bar a second claim based on
a later determination from different medical evidence that such a
disease subsequently exists.[3]

*Parris* and *Cook* are clearly distinguishable from the case at
bar. In this case, the first claim was not dismissed, as in *Cook* and
*Parris*, due to insufficiency of the medical evidence to establish an
occupational disease; no amount of medical evidence could have

---

[3] This result is necessitated by our workers' compensation statute of limitations and
the nature of latent, progressive diseases which do not manifest themselves until several
years after exposure to the causative hazard. For most occupational diseases, one of the
triggering dates of the limitations period is "the first communication of a diagnosis of an
occupational disease." *See* Code § 65.1-52. Once an employee receives such a communica-
tion, he must promptly (usually within two years) file a claim or be forever barred. How-
ever, the medical evidence upon which the diagnosis is based may be insufficient to legally
prove an occupational disease. If this decision were *res judicata* the claimant would be
caught in the dilemma of either bringing the suit before the evidence was sufficient to
establish an occupational disease or waiting until the evidence was sufficient and possibly
having his claim time barred.

proved the existence of an occupational disease. Rather, the claim was dismissed because the hearing loss was based on an ordinary disease of life for which the law provided no remedy. The second claim was not based on a later diagnosis derived from different medical evidence as in *Cook* and *Parris*; rather, it was based on the same medical results and findings as the first claim. The only difference between the two claims was the state of the law at the times the claims were filed.

■ We realize the inequity in the fact that had Childress simply waited until after July 1, 1986, to file his first claim, his hearing loss would, in all probability, be compensable under Code § 65.1-46.1. We are, however, unwilling to alter well established *res judicata* principles to remedy this inequity. "*[R]es judicata* is a judicially created doctrine resting upon public policy considerations which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent harassment of parties." *K & L Trucking Co. v. Thurber*, 1 Va. App. 213, 219, 337 S.E.2d 299, 302 (1985). "[T]he doctrine is firmly established in our jurisprudence and should be maintained where applicable." *Id*. Because none of the well recognized exceptions to the *res judicata* doctrine are applicable, the commission was bound by its May 30, 1986 decision dismissing Childress' claim. Since it so held, we affirm its decision.

*Affirmed.*

Koontz, C.J., and Barrow, J., concurred.