Warren BARGER and Marion Iwancio, Appellees,

v.

MAYOR & CITY COUNCIL OF BALTIMORE, a Municipal Corporation, Appellant.

No. 79–1226.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1980.

Decided March 5, 1980.

---

William Hughes, Associate City Sol., Baltimore, Md. (Benjamin L. Brown, City Sol., J. Warren Eberhardt, L. William Gawlik, Asst. City Sols., Baltimore, Md., on brief), for appellant.

Paul D. Bekman, Baltimore, Md. (William H. Engelman, Kaplan, Heyman, Greenberg, Engelman & Belgrad, P. A., Baltimore, Md., on brief), for appellees.

Before WINTER and PHILLIPS, Circuit Judges, and HOWARD *, District Judge.

WINTER, Circuit Judge:

Baltimore City appeals from judgments entered against it in two consolidated actions by former marine employees for damages for loss of hearing brought under the Jones Act and general admiralty law. We affirm.

I.

Plaintiffs, Warren Barger and Marion Iwancio, are former members of the fire department of the City of Baltimore. Before they retired, Barger and Iwancio worked in the Marine Division of the department as crew members of the city's fireboats. By the early 1970's, these firemen began to suffer from hearing loss. Their hearing difficulties stemmed from prolonged exposure to the loud noise emitted by the engines of the diesel fireboats, which had replaced the city's steampowered fireboats around 1960. Because of their hearing impairments, the two firemen retired, Barger in 1975 and Iwancio in 1977, and they received special disability pensions from the city.

Subsequently, Barger and Iwancio brought this suit under the Jones Act, 42 U.S.C. § 688, and general maritime law to recover damages for their loss of hearing, based upon the city's alleged negligence in the operation of the fireboats with the noisy engines. The jury found that the city had been negligent and ruled in favor of the firemen both under the Jones Act and gen-

---

* Honorable Joseph C. Howard, United States District Judge for the District of Maryland, sitting by designation.

eral maritime law. Barger was awarded $153,000 and Iwancio received $112,500.

## II.

■ The city challenges these awards principally on the basis of the district judge's instructions concerning negligence per se.[1] In his charge to the jury concerning both the Jones Act and general maritime law, the district judge instructed the jury that the city had been subject to the regulations of the Occupational Safety and Health Administration (OSHA) since 1971 and that if the city failed to comply with the OSHA noise regulation in the operation of its fireboats, it would be guilty of negligence per se. At trial, an expert described the supposedly applicable OSHA noise regulation to the jury and testified that the city had failed to observe the requirements of that regulation.

■ The city objects to the negligence per se instruction mainly in two respects. First, the city correctly points out that the city of Baltimore became subject to OSHA regulations only in 1973, not as early as 1971 as the trial judge instructed.[2] While the trial judge did misstate the date upon which OSHA regulations began to apply to the city, this two year discrepancy is of minor significance. In this respect, the gist of the trial judge's instruction was that the city's actions could be measured against the OSHA noise regulation for a few years prior to the firemen's retirement in 1975 and 1977; whether the regulation began to govern the city's conduct in 1973 or two years earlier in 1971 was relatively inconsequential. Therefore, this error of the trial judge was harmless.

Second, and more importantly, the city insists that the OSHA noise regulation does not apply to the working conditions of Jones Act seamen and that therefore the trial judge committed error by including any negligence per se instruction based upon the OSHA noise standards. The OSHA regulations, most of which have been incorporated by reference into Maryland law by the Maryland Commissioner of Labor and Industry,[3] specifically refrain from addressing the working conditions of Jones Act seamen. In 29 C.F.R. § 1910.5(b), the Labor Department placed outside the reach of the regulations employees whose occupational safety and health are within the statutory jurisdiction of other federal agencies. The Coast Guard is empowered to lay down health and safety rules for Jones Act seamen, and the courts have recognized that the OSHA regulations thus do not apply to this category of employees. *See National Marine Service, Inc. v. Gulf Oil Co.*, 433 F.Supp. 913 (E.D.La.1977), aff'd., 608 F.2d 522 (5 Cir. 1979); *Clary v. Ocean Drilling & Exploration Co.*, 429 F.Supp. 905 (E.D.La.1977).[4]

---

1. Preliminarily, the city suggests that the Jones Act does not permit recovery for occupational diseases, in this instance a loss of hearing. The city is clearly mistaken, since the Jones Act incorporates the remedies provided under the FELA, see 46 U.S.C. § 688, and since there is no doubt that a worker may recover under the FELA for occupational diseases. *See Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *see also Young v. Clinchfield Railroad Company*, 288 F.2d 499 (4 Cir. 1961). The city cites only one case to the contrary, *Dalton v. American President Lines*, 339 F.Supp. 821 (N.D.Calif.1972), in which the court stated that hearing loss was an occupational disease which was not compensable under the Jones Act. In light of .Urie, this statement in *Dalton* cannot be considered authoritative.

2. The OSHA regulations themselves do not include political subdivisions of states, such as the city of Baltimore, within the definition of employer. 29 C.F.R. § 1910.2(c). When Maryland assumed responsibility for administering the OSHA regulations within its borders, it broadened the definition of employer to include state, municipal, and county governments. Md.Ann.Code, Art. 89, § 29(b). The Maryland statute did not become effective until 1973; therefore, prior to 1973, the OSHA regulations did not apply to the City of Baltimore.

3. See 38 Fed.Reg. 17834–17838; Md.Ann.Code, Art. 89, § 31(*l*).

4. Moreover, the draftsmen of the OSHA regulations confirmed the intent of 29 C.F.R. § 1910.5 when they omitted crew members from the scope of the OSHA longshoremen regulations. 29 C.F.R. § 1918.1.

In response, the firemen rest upon the broad language of the Maryland statute, establishing the state machinery to administer the federal OSHA regulations, which defines "employee" as "an employee of an employer who is employed for wage[s], salaries or commissions in the business, trade, commerce or industrial activity of his employer [including] employees of the State, county, city, and municipal governments . . . ." Md.Ann.Code, Art. 89, § 29(c). The firemen contend that, through this all-inclusive language, Maryland has extended the protections of OSHA to Jones Act seamen even if the federal OSHA regulations themselves do not.

Nowhere, however, has Maryland evinced an express intent to include Jones Act seamen within the protections of the OSHA regulations. Maryland has enacted no regulations aimed at crew members to supplement federal OSHA regulations. Rather, Maryland incorporated into its law the relevant portions of the federal OSHA regulations as a whole, including the explicit exclusion of workers under the jurisdiction of federal agencies other than the Labor Department. Because § 29(c) does not purport to reach employees, such as Jones Act seamen, who are subject to the jurisdiction of federal agencies besides the Labor Department, it is unlikely that the general language of the Maryland statute was intended to discard this express exclusion contained in the OSHA regulations which Maryland adopted. Fairly read, § 29(c) is a provision designed to confirm the broad scope of application of the health and safety standards, but not designed to alter the exclusion directed explicitly at employees such as Jones Act seamen.

■ Thus, because the OSHA noise regulation did not apply to the working conditions of these firemen, who were Jones Act seamen, the district judge erred when he included a negligence per se instruction based upon the OSHA noise regulation. The city, however, cannot obtain a reversal of the jury's verdict based upon this error. When the district judge presented the city with his proposed instructions, the city made no objection based upon the inapplicability of the OSHA noise regulation to

Jones Act seamen. In fact, the city expressly agreed to the district judge's proposed instructions before he presented them to the jury. Therefore, the literal terms of Fed.R.Civ.P. 51 prevent the city from raising this objection on appeal when it failed to present its objection to the district court.

■ Of course we will permit appellants to avoid the strictures of Rule 51 even if they lodged no objection at trial, if the error of the trial judge resulted in a "miscarriage of justice." *See, e. g., United States v. Board of Education of Mineral County*, 253 F.2d 760, 765 (4 Cir. 1958). For several reasons, justice will not be disserved by allowing the verdicts in this case to remain undisturbed.

First, the OSHA regulation at issue in this case was largely a restatement of industry practice regarding employee exposure to noise. The regulation sets out noise levels which are dangerous, requires that employers take steps to reduce the noise or provide employees with personal protective devices, and mandates the establishment of hearing conservation programs. 29 C.F.R. § 1910.95. At trial, an expert testified that it had long been recognized in industry that prolonged exposure to loud noise could cause hearing loss, that employers normally provided protective devices to workers exposed to loud noises, and that industries plagued with noise problems frequently instituted hearing conservation programs. Thus, the regulation only embodies a standard of care which might be applied to the city even in the absence of the regulation.

In addition, under the district judge's instruction, the jury applied the regulation to the city only during the period beginning in 1971, a small part of the time that the firemen worked on the fireboats. Since the diesel boats came into use around 1960 and since the firemen retired in the mid-1970's, the period during which the regulation was not applied by the jury was about twice as long as the period during which the jury would have compared the city's conduct to the standard contained in the noise regulation.

Finally, both firemen sought medical treatment for their loss of hearing soon

after 1971. Barger consulted a physician in 1972 and Iwancio secured medical treatment for his hearing problems in 1975. Therefore, there was convincing evidence that their loss of hearing had been caused by noise exposure that took place over a long period prior to 1971, the effective date of the regulation according to the district judge.[5]

In sum, there was strong evidence that the plaintiffs' injury was sustained prior to 1971, the noise regulation was applied by the jury for only a small part of the period during which the firemen were exposed to the loud noise, and the noise regulation itself was merely a codification of industry practices, practices by which the city could fairly be judged. Consequently, because failure to correct the trial judge's error will not result in a miscarriage of justice, *see* *Harkins v. Ford Motor Co.*, 437 F.2d 276 (3 Cir. 1970), we decline to notice the erroneous negligence per se instruction as "plain error".

### III.

■ Finally, the city contends that the jury's verdicts were excessive.[6] Barger recovered $153,000 and Iwancio was awarded $112,500. At trial, it was shown that their wage losses alone, deducting the pensions they would receive from the city, amounted to almost $101,000 for Barger and almost $75,000 for Iwancio. Considering the additional emotional and physical injury that results from a loss of hearing, we do not

think that the jury's verdicts can be considered excessive.[7] Certainly, the district judge did not abuse his discretion when he refused to overturn the jury's awards. *See* *West v. Richmond, Fredericksburg & Potomac Railroad*, 528 F.2d 290 (4 Cir. 1975).

AFFIRMED.

■

5. As well, the district judge included in his charge negligence instructions other than the negligence per se instruction, instructions which provided the jury with a means to find negligence based on the city's failure to take preventive measures commonly instituted by other employers.

6. In a related vein, the city argues that the firemen realized double recovery, apparently because they will receive disability pensions in addition to their damage awards. However, the district judge directed the jury to subtract the amount of the firemen's pensions from their total wage losses in calculating the firemen's damages. In addition, the proof of wage losses presented by the plaintiffs included a deduction of the pensions from the total wage losses to reach a net loss figure. Thus, the jury was adequately instructed not to award a double recovery, and the proof at trial was presented in a manner that would not lead the jury to overlook the firemen's pensions.

7. At oral argument, the city attempted to argue that *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), prevented the firemen from recovering damages for emotional and physical injuries, beyond their calculable loss of wages. In that decision, the Supreme Court held that a wrongful death plaintiff could not recover damages for loss of society under the Death on the High Seas Act, 46 U.S.C. §§ 761 *et seq.*, which limits damages to compensation for "pecuniary loss." That ruling is totally inapposite to this case, because it was based on the restrictive language of the Death on the High Seas Act.