**Norfolk**

THOMAS S. BELCHER

v.

CITY OF HAMPTON

No. 0761-85

Argued October 16, 1985

Decided January 7, 1986

COUNSEL

Robert E. Dely (Patten, Wornom & Watkins, on briefs), for appellant.

*Amicus curiae:* (Lawrence J. Pascal; Ashcraft & Gerel, on brief), for appellee.

W. Stephen Moore, Chief Deputy Hampton City Attorney (A. Paul Burton, Hampton City Attorney, on brief), for appellee.

OPINION

**BAKER, J.**—On September 17, 1984, Thomas S. Belcher (claimant), who was employed in the Fire Department of the City of Hampton (City), filed an Application for Hearing with the Industrial Commission of Virginia (Commission) asserting that he had suffered a "noise-induced hearing loss" during the course of his employment as a fireman for the City. The application stated the date of the accident to be "Cumulative, Date of diagnosis August 16, 1984" and that the purpose for which the hearing was requested was to prove an "occupational disease" the nature of which was "noise-induced hearing loss."

At the hearing, Mr. Henry C. Hecker, an audiologist, testified that he had tested claimant and found that claimant had a hearing loss of thirty-three decibel in the left ear and thirty-seven decibel in the right ear, and that the test he made disclosed claimant's hearing loss to be "consistent with noise exposure injury."

Although three otolaryngologists examined and treated claimant, none of them were asked to testify. None of their notes contained any statement that claimant's hearing loss was job related, although one, Dr. Smith, had made a notation that an audiogram was conducted in his office that showed "a bilateral high frequency hearing loss which is compatible with noise exposure." He also noted that the claimant had "some low frequency loss on the left side which is probably secondary to ear infection problems."

While the reports of the three specialists disclosed that claimant had a history of recurrent ear infections, the record is devoid of any statement as to whether the hearing loss from which claimant suffered was an occupational disease, or whether such loss could be classified as an "ordinary disease of life."

The parties agree that there is no claim that a single identifiable incident caused the condition suffered by claimant. The City does not contest claimant's assertion that in the course of his employment he was subject to a variety of loud noises such as air horns, sirens, roaring engines, pumps, and portable generators. While there was evidence that claimant had been exposed to loud noises in occupations held by him prior to his employment as a fireman with the City, and that from 1975 to July 1984, claimant had suffered a series of ear infections, insofar as we consider the cause and effect issue, the Commission's factual finding that the claimant's hearing loss was as a result of noise induced trauma is binding upon us. *See Caskey* v. *Dan River Mills, Inc.,* 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983). But this does not establish hearing loss as an occupational disease.

Thus, the issue here is whether the noises to which the claimant has been exposed created a condition which could be classified and compensated as an occupational disease, or whether his hearing loss is an ordinary disease of life and not compensable unless within the statutory exceptions. *See infra* footnote 1.

In *Holly Farms* v. *Yancey,* 228 Va. 337, 321 S.E.2d 298 (1984), the issue decided by the Supreme Court of Virginia was whether a lumbrosacral strain of gradual development is an occupational disease as defined by Code § 65.1-46. The Court held that it was not. The opinion pointed out that Code § 65.1-7 provides coverage in only two circumstances: "injury by accident or occupational disease." *Id.* at 340, 321 S.E.2d at 299. The Court cited *Virginia Electric & Power Co.* v. *Cogbill,* 223 Va. 354, 288 S.E.2d 485 (1982), and several other cases to show that to recover for an "injury by accident" the evidence must disclose an identifiable incident which caused a sudden, obvious mechanical or structural change in the claimant's back. *Id.* at 356, 288 S.E.2d at 486. Stating further that back injuries are not diseases, it cited with approval an opinion of the Commission which ruled that: "Back strain is not a disease. Strain of the muscles or tendons in the back is due to a single or repeated physical trauma which injures

the muscle or tendons." *Holly Farms* v. *Yancey,* 228 Va. at 340, 321 S.E.2d at 300 (quoting *Hensley* v. *Morton Frozen Foods Division,* 46 O.I.C. 107, 109 (1964)).

■ The Court then noted that the claimant urged it to adopt a broad definition of disease which would encompass virtually anything that goes wrong with the body. The Court observed that this argument was advanced "even though the record is devoid of any evidence, expert or otherwise, that a back strain is a disease." *Holly Farms* v. *Yancey,* 228 Va. at 340, 321 S.E.2d at 300. The claimant merely asserted that back strain is a disease. In rejecting the request the Court said:

A definition of either "injury" or "disease" that is so broad as to encompass any bodily ailment of whatever origin is too broad because it would make unnecessary and meaningless the two categories specifically set forth in the Act.

*Id.* at 340, 321 S.E.2d at 300. As noted above, the record in the case before us is devoid of any evidence—expert or otherwise—that the hearing loss complained of is a disease. The rationale applied in *Yancey* is equally applicable here.

In *Yancey,* the Commission found that the claimant's back strain should have been classified as an "ordinary disease of life." *Id.* at 341, 321 S.E.2d at 300. The Commission made the same finding in this case. In *Yancey,* the Court held that even if such finding be accepted, the claimant would not be entitled to compensation. The Court reviewed Code § 65.1-46, noting the exceptions which must be met if an ordinary disease of life is to be compensated.[1] Noting that subparagraph (2) clearly was not applicable, the Court then stated that for subparagraph (1) to be applicable "the claimant must first establish the existence of an 'occupational disease' and then establish that the ordinary disease of life . . . followed 'as an incident of' that occupational disease." *Id.* at 342, 321 S.E.2d at 301. The Court then held that the claimant failed to meet the statutory requirements.

---

[1] The applicable portion of Code § 65.1-46 reads:

No ordinary disease of life to which the general public is exposed outside of the employment shall be compensable, except: (1) When it follows as an incident of occupational disease as defined in this title; or (2) When it is an infectious or contagious disease contracted in the course of employment in a hospital or sanitarium or public health laboratory.

Subsequent to *Yancey,* in *Western Electric Co.* v. *Gilliam,* 229 Va. 245, 329 S.E.2d 13 (1985), the Supreme Court of Virginia was asked to rule whether tenosynovitis gradually incurred on account of repeated work-related trauma is compensable as an occupational disease under the Workers' Compensation Act. For the purposes of its *per curiam* opinion, the Court accepted the Commission's finding that tenosynovitis is a disease and said:

> [A]n ordinary disease of life, *i.e.,* a disease "to which the general public is exposed outside of the employment," Code § 65.1-46, is not covered by the Act unless it falls within one of the two exceptions stated in the statute. And, construing that statute and citing Commission decisions, *we have held that disability resulting from work-relating aggravation of such a disease is not compensable. Ashland Oil Co.* v. *Bean,* 225 Va. 1, 300 S.E.2d 739 (1983). (emphasis added).

*Id.* at 247, 329 S.E.2d at 14. Then, citing *Yancey,* the Court held that claimant's work-related tenosynovitis is not an occupational disease compensable under the Workers' Compensation Act. *Id.*

■ We agree with the Commission's finding that hearing loss, as was the back strain in *Yancey* and the tenosynovitis in *Gilliam,* is an ordinary disease of life suffered by much of the population for a variety of reasons, including but not limited to noise exposure both on and off the job, by gradual injury, by infection, and the aging process. Noise exposure is inescapably connected to modern living. We are constantly subjected to loud noises, including but not limited to sirens, horns, and engines which may be heard daily about the streets.

Whether a hearing loss is to be compensable as an occupational disease is a matter for the General Assembly to decide. We can merely repeat what the Supreme Court has said with respect to similar issues:

> Our decision here is based . . . upon our interpretation of legislative intent as reflected in the totality of the Workers' Compensation Act *as it exists today.* Some contend that any disability arising out of and during the course of employment, including disabilities resulting from both injuries and diseases caused gradually by repeated trauma, should be made compensable under the Workers' Compensation Act.

But such a consequential decision, impacting as it must a broad spectrum of economic and social values, is a matter of public policy reserved to the original and exclusive jurisdiction of the General Assembly, and we will not trespass upon its domain.

*Western Electric Co.* v. *Gilliam,* 229 Va. at 247-48, 329 S.E.2d at 14-15.

Accordingly, we affirm the decision of the Commission.

*Affirmed.*

Barrow, J., and Hodges, J., concurred.