41 F.3d 928
 NORFOLK & WESTERN RAILWAY COMPANY, Plaintiff-Appellant,
v.
ACCIDENT & CASUALTY INSURANCE COMPANY OF WINTERTHUR;
Insurance Company of Florida; Southern American Insurance
Company; Northwestern National Insurance Company of
Milwaukee; Bellefonte Insurance Company; California Union
Insurance Company; The Insurance Company of North America;
Employers Insurance of Wausau; American Reinsurance
Company; Yosemite Insurance Company; General Reinsurance
Corporation; United National Insurance Company; Protective
National Insurance Company; Central National Insurance
Company of Omaha; American Centennial Insurance Company;
First State Insurance Company; Highlands Insurance Company;
Royal Indemnity Company; Southeastern Fidelity Insurance
Company; Argonaut Insurance Company, Inc.; Mead
Reinsurance; Fuji Fire & Marine Insurance Company; The
American Insurance Company; The Fireman's Fund Insurance
Company; National Surety Corporation; The Federal
Insurance Company; Allstate Insurance Company; Northbrook
Excess & Surplus Insurance Company; Employer's Mutual
Casualty Company; Employer's Surplus Lines Insurance
Company; Harbor Insurance; Casualty Insurance; The Home
Insurance Company; Transamerica Premier Insurance Company;
International Surplus Lines Insurance Company; Stonewall
Insurance Company, Defendants-Appellees.
Illinois Central Railroad Company; Southern Pacific
Transportation Company; CSX Transportation, Incorporated;
Burlington Northern Railroad Company; American Home
Assurance Company; Audubon Indemnity Company; Birmingham
Fire Insurance Company of Pennsylvania; Granite State
Insurance Company; Landmark Insurance Company; Lexington
Insurance Company; National Union Fire Insurance Company of
Pittsburgh, Pennsylvania; New Hampshire Insurance Company;
The Insurance Company of the State of Pennsylvania; Fenn
and London Market Companies, Amici Curiae.
 No. 92-2031.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 31, 1993.
Decided Dec. 7, 1994.
 
 ARGUED: William Fain Rutherford, Jr., Woods, Rogers & Hazlegrove, Roanoke, VA, for appellant. Stuart Henry Newberger, Crowell & Moring, Washington, DC, for appellees. ON BRIEF: Frank K. Friedman, Paul C. Kuhnel, Woods, Rogers & Hazlegrove, Roanoke, VA; Stephen A. Trimble, Patrick Kavanaugh, Hamilton & Hamilton, Washington, DC, for appellant. Andrew H. Marks, Mark A. Behrens, Crowell & Moring, Washington, DC, for appellees Ins. Co. of North America and California Union Ins. Co.; Robert E. Heggestad, Casey, Scott, Canfield & Heggestad, P.C., Washington, DC; Stephen A. Cozen, Thomas G. Wilkinson, Jr., Cozen & O'Connor, Philadelphia, PA, for appellee Harbor Ins. Co.; James W. Greene, Bromley, Greene & Walsh, Washington, DC; Robert J. Bates, Jr., Maria G. Enriquez, Pope & John, Ltd., Chicago, IL, for appellee American Re-Insurance Co.; Joseph L.S. St. Amant, Kathleen T. Sooy, Elizabeth E.S. Skilling, McGuire, Woods, Battle & Boothe, Richmond, VA, for appellees Northwestern Nat. Ins. Co., Bellefonte Ins. Co., and Insurance Co. of Florida; Michael D. Gallagher, Lisa B. Zucker, German, Gallagher & Murtagh, Philadelphia, PA; David P. Joyce, Stone, Worthy, Reynolds & Joyce, Martinsville, VA, for appellee Stonewall Ins. Co.; S.D. Roberts Moore, Phillip V. Anderson, Walter H. Peake, III, Melissa W. Robinson, Gentry, Locke, Rakes & Moore, Roanoke, VA, for appellees American Centennial Ins. Co., Argonaut Ins. Co., First State, Highlands Ins. Co., Royal Ins. Co., and Southeastern Fidelity Ins. Co.; Philip J. McGuire, Timothy M. Nolan, Gleason, McGuire & Shreffler, Chicago, IL; M. Lanier Woodrum, Fox, Wooten & Hart, Roanoke, VA, for appellees Allstate Ins. Co.; Steven K. Davidson, Steven J. Barber, Steptoe & Johnson, Washington, DC, for appellee Home Ins. Co.; Richard H. Gimer, Richard A. Ifft, Stephen L. Humphrey, Hopkins & Sutter, Washington, DC, for appellee Employers' Surplus Lines Ins. Co.; William A. Brasher, The Law Offices of William A. Brasher, St.Louis, MO, for amicus curiae Burlington Northern R.R. Co.; Weston A. Marsh, Freeborn & Peter, Chicago, IL, for amicus curiae Illinois Central R.R. Co.; David W. Steuber, Tyrone R. Childress, Hill, Wynne, Troop & Meisinger, Los Angeles, CA, for amicus curiae Southern Pacific Transp. Co.; Jerold Oshinsky, Anderson, Kill, Olick & Oshinsky, Washington, DC, for amicus curiae CSX Transp. Inc.; M. Elizabeth Medaglia, Richard S. Kuhl, Jackson & Campbell, P.C., Washington, DC, for amici curiae American Home Assur. Co., et al.; George Marshall Moriarty, Kenneth W. Erickson, Peter M. Brody, Matthew M. Burke, Ropes & Gray, Boston, MA, for amicus curiae Fenn & London Market Cos.
 Before WIDENER and NIEMEYER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 Affirmed in part, appeal dismissed in part, and remanded by published opinion. Judge WIDENER wrote the opinion, in which Judge NIEMEYER and Senior Judge CHAPMAN joined.
 OPINION
 WIDENER, Circuit Judge:
 
 
 1
 This dispute arises out of several excess liability insurance policies purchased by Norfolk and Western Railway and is before us on an interlocutory appeal from the district court's order denying N & W's motion for partial summary judgment and making two declarations relevant to the insurance policies. We affirm in part and dismiss the appeal in part as having been improvidently granted.
 
 I.
 
 2
 The Norfolk and Western Railway Company (N & W) has been in operation for more than eighty years. N & W has operated both freight and passenger trains. A number of N & W's present and former employees brought FELA[1] damage claims against N & W for hearing loss which they claimed was caused by N & W's negligence. More specifically, they alleged that their hearing loss was a result of N & W's negligent operation of its railroad because of an unreasonable level of noise, its failure to abate the noise, failure to take steps to protect its employees from the noise, and failure to warn the employees about the noise.
 
 
 3
 N & W purchased numerous policies of insurance that covered the period from July 11, 1960 to July 11, 1986.[2] Anticipating that a large number of noise-induced hearing loss claims will be filed against it in the future and seeking reimbursement for past claims paid, N & W filed a declaratory judgment action against several insurance company defendants. After extensive discovery, N & W filed a motion for partial summary judgment, which asked the district court to declare that noise-induced hearing loss claims are "bodily injuries" that arose out of a "single occurrence" within the terms of the policies. The defendants opposed the motion, and certain of the defendants filed a cross-motion for summary judgment. They sought a declaration that noise-induced hearing loss is an "occupational disease."[3] The district court declared that noise-induced hearing loss is an occupational disease and that a limitation of liability provision known as Paragraph 6 denies coverage for any claim in which the employee failed to cease work during the policy period. 796 F.Supp. 929. The district court also denied N & W's motion for partial summary judgment to the extent it sought a declaration that the employees' claims arose out of a single occurrence. N & W petitioned for permission to take an interlocutory appeal, which we granted.[4]
 
 
 4
 There are three issues before us: (1) whether noise-induced hearing loss is an occupational disease within the meaning of the policies; (2) whether the Paragraph 6 limitation of liability provision correctly denies coverage for claims from employees who did not cease work because of their occupational disease; and (3) whether N & W's negligence causing noise-induced hearing loss is a single "occurrence" out of which the employees' claims arose within the meaning of the policies.
 
 II.
 
 5
 We first turn to the issue of whether noise-induced hearing loss is an "occupational disease," as the insurance companies contend. The district court declared that noise-induced hearing loss is an "occupational disease". We agree with the district court. We decided that very point in a Jones Act case under FELA law in Barger v. Mayor & City Council of Baltimore, 616 F.2d 730, 732 n. 1 (4th Cir.) (recognizing hearing loss from on-the-job noise as an occupational disease), cert. denied, 449 U.S. 834, 101 S.Ct. 105, 66 L.Ed.2d 39 (1980). Present Virginia law is to the same effect. See Childress v. Beatrice Pocahontas Co., 6 Va.App. 88, 366 S.E.2d 722 (1988); Island Creek Coal Company v. Breeding, 6 Va.App. 1, 365 S.E.2d 782 (1988). We adhere to our decision in Barger and affirm the district court on that point.
 
 III.
 
 6
 We next turn to the issue of whether the district court correctly declared that Paragraph 6,[5] denies coverage for claims for an occupational disease in which the employees did not cease work. Paragraph 6 reads:
 
 
 7
 This policy shall only indemnify the Assured against their liability for occupational disease in cases where the employee's (employees') cessation from work, as a result thereof, first occurs during the period of insurance covered by this policy.
 
 
 8
 The district court decided that Paragraph 6 was not ambiguous and that under its plain meaning, there was no coverage for liability of N & W for an occupational disease in which the employee did not cease working. It correctly relied upon Carter v. Carter, 202 Va. 892, 121 S.E.2d 482, 485 (1961), for the proposition that where the meaning of language in an insurance contract is clear, it needs no interpretation. We thus affirm the district court's decision as it relates to Policy No. 509/68 D.D.1040.
 
 
 9
 It should be remembered that the district court's opinion recognized that all of the provisions in all of the policies at issue in this case are not the same, and it stated in its opinion that its decision only determined the rights of insurers whose policies contained "provisions similar in all material respects to the quoted language [used in its opinion]." We are provided in the appendix with five of the policies, four in addition to Policy No. 509/68 D.D.1040. An examination of Paragraph 6 in those four additional policies shows that at least one of them, Policy No. 509/PY333485, has a Paragraph 6 significantly different, at least in wording, from that in Policy No. 509/68 D.D.1040. Paragraph 6 in Policy No. 509/PY333485 provides:
 
 
 10
 This policy covers liability for occupational disease where the first diagnosis of the disease is made during the term of its policy.
 
 
 11
 It is apparent that because of the difference in the two Paragraphs 6 the same decision as to liability on a particular set of facts might not be called for or even permitted. We have not attempted any analysis of all of the insurance policies at issue in this case, nor did the district court distinguish them, nor have the attorneys furnished us with any such analysis in their briefs on appeal. But because of the differences in the policy provisions we have just mentioned, we think the better course is to decide that our opinion is binding as a matter of law only as to Policy No. 509/68 D.D.1040. Whether or not the provisions of the other policies at issue in this case are similar enough for this decision to have stare decisis effect is a question which will have to be decided in the first instance by the district court on remand. Thus, we affirm the decision of the district court so far as it concerns Policy No. 509/68 D.D.1040. The appeal, so far as it concerns a construction of Paragraph 6 for all the remaining policies involved here, is dismissed without prejudice as improvidently granted. See, e.g., Parcel Tankers v. Formosa Plastics Corp., 764 F.2d 1153 (5th Cir.1985); General Motors Corp. v. United States, 584 F.2d 1366 (6th Cir.1978) (en banc); 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure, Sec. 3929 (1977).
 
 IV.
 
 12
 We next turn to the issue of whether N & W's negligence is a single "occurrence" within the meaning of the policies' liability limits. The district court denied N & W's motion for partial summary judgment to the extent it sought a declaration that the employees' claims arose from a single occurrence. N & W would define "occurrence" as "the systematic, unprotected exposure of NW's work force to allegedly hazardous noise." (Opening Br. pp. 22-23)
 
 
 13
 N & W would collect all of its negligent acts contributing to or causing noise-induced hearing loss, regardless of the date, place, or activity, into one "occurrence," under the policy, thus insuring aggregation of noise-induced hearing loss claims under Paragraph 4. See n. 1, supra. That the distinction between a single and more than one occurrence might be critical under some policies is evident because of the wording of Paragraph 4 of Policy No. 509/68 D.D.1040 which attaches liability to the insurance company following the payment by N & W of the self-insured requirement "in respect of each occurrence." Using N & W's definition of "occurrence," if the numerous noise-induced hearing loss claims against N & W, even if each is for less than the self-insured requirement, are all caused by the same occurrence, the total amount paid by N & W on account of the aggregate of those claims would be the figure used in ascertaining the self-insured requirement. But Policy No. 509/68 D.D.1040 provides in terms for the aggregation of "occupational disease" claims, so the issue with respect to "occurrence" has no relevance under that policy in the context present here and is moot.[6]
 
 
 14
 In this respect, we also note that the various contracts of insurance do not have the same definition of "occurrence." Compare Policy No. 509/68 D.D.1040 ("one happening or series of happenings, arising out of or due to one event." Definition A) with Policy No. 582/771446 ("occurrence" not defined) and Policy No. 509/PY333485 ("An accident and/or happening or series of accidents and/or happenings arising out of one event neither expected or intended from the standpoint of the Assured." Definition A).
 
 
 15
 However persuasive the definition of "occurrence" adopted by the district court may be, in the context present here, that question is moot so far as Policy No. 509/68 D.D.1040 is concerned, and at least one other policy has a differently worded definition of "occurrence," and one not at all.
 
 
 16
 Accordingly, we dismiss the appeal without prejudice as improvidently granted so far as it concerns the denial of summary judgment to N & W with respect to the definition of "occurrence." We express no opinion on that question.
 
 V.
 
 17
 It is unusual that we explicitly state in an opinion what we do not decide, see Loving v. Alexander, 745 F.2d 861, 867 (4th Cir.1984), but in this case we think we should do so.
 
 
 18
 N & W takes the position that we should decide that the district court implicitly decided that the noise-induced hearing loss claims did not constitute "bodily injuries" under the terms of the policy, and that we should also decide that this implicit decision was error.[7] The district court did decide that the noise-induced hearing loss claims were "occupational disease" claims under the terms of the policy. It decided what the claims were and not what they were not. The district court did not address the question of whether or not noise-induced hearing claims were "bodily injuries" under the terms of the policy, and neither do we.
 
 
 19
 N & W also claims that the noise-induced hearing loss claims arose from a single "occurrence," whether they be "bodily injuries" or "occupational disease" claims. The district court decided that such noise-induced hearing loss claims did not arise out of a single "occurrence." We have dismissed the appeal as to that point, so the decision of the district court is in effect. We express no opinion on that question. Should the district court wish to reconsider its opinion, that is a matter for another day.
 
 VI.
 
 20
 In summary, we decide that noise-induced hearing loss claims under the terms of Policy No. 509/68 D.D.1040 are claims for an "occupational disease." We also decide that there is no coverage under Paragraph 6 of that same policy for claims with respect to an occupational disease unless there has been a "cessation from work, as a result thereof" of the claimant.
 
 
 21
 The appeal is dismissed without prejudice with reference to all of the policies except No. 509/68 D.D.1040 as it relates to whether coverage is barred under Paragraph 6 of that same policy. On remand, the district court will have to decide whether or not the dispute under the various policies is subject to stare decisis as it relates to that question.
 
 
 22
 We also dismiss without prejudice the appeal as it relates to the definition of "occurrence" under the terms of the policies involved, leaving the decision of the district court intact.
 
 
 23
 The judgment of the district court is accordingly affirmed in part, the appeal is dismissed in part, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 24
 AFFIRMED IN PART, APPEAL DISMISSED IN PART, AND REMANDED.
 
 
 
 [1]
 Federal Employers' Liability Act, 45 U.S.C. Secs. 51-60
 
 
 [2]
 The coverage is for excess liability for "personal injury and property damage," not merely for FELA claims
 
 
 [3]
 The district court stated that it considered this motion in its memorandum accompanying the order which is on appeal. The order denies N & W's motion and issues two declarations
 
 
 [4]
 N & W filed a copy of Policy No. 509/68 D.D.1040 with its motion for summary judgment and took the position that it was a representative policy. That it may be representative in some respects but not in others is evident from our discussion in the body of the opinion. In any event, that is the policy which the district court construed. The policy provisions which the district court construed are set out here in full and copied from its opinion:
 The insuring provision which the court is asked to interpret provides:
 [1.] To indemnify the Assured for any and all sums which the Assured shall be legally liable to pay and shall pay as damages and expenses ... on account of personal injuries arising out of occurrences happening during the policy period as stated in the schedule forming part of this policy and due to the conduct of the Assured's business. [A.86.]
 The insurer's liability is stated as follows:
 [4.] Liability shall attach to Underwriters only after the Assured has paid or has been held liable to pay the full amount of ultimate net loss liability as stated in Item 5(a) of the Schedule ultimate net loss in respect of each occurrence (hereinafter referred to as "underlying limit") and the Underwriters shall then be liable to pay up to a further amount as stated in Item 5(b) ultimate net loss in respect of each occurrence. [A.86.]
 The term "occurrence" is defined as follows:
 [Definition A.] It is understood and agreed that the term "occurrence" wherever used herein, shall mean one happening or series of happenings, arising out of or due to one event. [A.87.]
 The term "personal injuries" is defined as follows:
 [Definition B.] The term "personal injuries" wherever used herein shall include, but not by way of limitation, bodily injuries, sickness, disease and death, suffered by any person or persons, including employees of the Assured injured during the course of their employment by the Assured, and as respects employees, occupational disease, including death at any time resulting therefrom, by reason of all operations of the Assured. [A.87.]
 The policies also provide:
 [6.] This policy shall only indemnify the Assured against their liability for occupational disease in cases where the employee's (employees') cessation from work, as a result thereof, first occurs during the period of insurance covered by this policy. [A.86.]
 
 
 [5]
 Paragraph 6, as quoted here, is contained in Policy No. 509/68 D.D.1040
 
 
 [6]
 Policy No. 509/68 D.D.1040 states in relevant part:
 
 
 [4]
 Liability shall attach to Underwriters only after the Assured has paid or has been held liable to pay the full amount of ultimate net loss liability as stated in Item 5(a)
 Item 5. Limit of Liability....
 (a) [$_____] (ultimate net loss in respect of each occurrence for P[ublic] L[iability] P[roperty] D[amage] and E[mployers'] L[iability] and in the aggregate for O[ccupational] D[isease].
 
 
 [7]
 Under Definition B, the policy states: "The term 'personal injuries' whenever used herein shall include ... bodily injuries, ... and as respects employees, occupational disease...."