MISSOURI PACIFIC RAILROAD COMPANY, on its own Behalf and as Successor in Interest to Chicago and Eastern Illinois Railroad Company and to Texas and Pacific Railway Company and Their Subsidiary and Affiliated Companies, Plaintiff-Appellant, v. AMERICAN RE-INSURANCE COMPANY et al., Defendants-Appellees.

Second District No. 2—95—1068

Opinion filed September 5, 1996.—Modified on denial of rehearing January 24, 1997.

COLWELL, J., dissenting.

Stephanie A. Scharf, Theodore R. Tetzlaff, and John H. Mathias, Jr., all of Jenner & Block, of Chicago, and James R. Schirott and Phillip A. Luetkehans, both of Schirott & Luetkehans, of Itasca, and Stuart H. Newberger, of Crowell & Moring, of Washington, D.C., for appellant.

Maria G. Enriquez and Catherine M. Crisham, both of Bates, Meckler, Bulger & Tilson, of Chicago, for appellee American Re-Insurance Company.

Audrey S. Hanrahan, of Haskell & Perrin, of Chicago, for appellees American Casualty Company and Continental Casualty Company.

James J. Berdelle, Susan L. Hartman and James R. Branit, all of Bullaro, Carton & Stone, of Chicago, for appellee Commercial Union Insurance Company.

Mark A. Kinzie, of Stinson, Mag & Fizzell, of St. Louis, Missouri, for appellee Federal Insurance Company.

Joseph S. Crociata, Stuart L. Peacock, and Colin M. Alberts, all of Gilberg & Kurent, of Washington, D.C., for appellee Fireman's Fund Insurance Company.

Eric C. Young, of Dunham, Boman & Leskera, of East St. Louis, for appellee Nationwide Mutual Insurance Company.

David C. Burtker and Eric Friedemann, both of French, Kezelis & Kominiarek, P.C., of Wheaton, and Samuel J. Arena, of Stradley, Ronon, Stevens & Young, of Philadelphia, Pennsylvania, for appellee Travelers Indemnity Company.

Stephen W. Thomson and Richard J. Behr, both of Thomson & Behr, of Edwardsville, and Mary Ann D'Amato and George L. Maniatis, both of Mendes & Mount, of New York, New York, for *amicus curiae.*

Mark D. Paulson and Lisa Marco Kouba, both of Clausen Miller, P.C., of Chicago, for other appellees.

JUSTICE RATHJE delivered the opinion of the court:

Plaintiff, Missouri Pacific Railroad Company (Missouri Pacific), appeals from a trial court order granting partial summary judgment to the defendants, American Re-Insurance Company and other named insurance companies (collectively, insurers). On appeal, Missouri Pacific contends that the trial court erred in granting the insurers' motion for partial summary judgment. We affirm the decision of the trial court.

This controversy stems from the purchase by Missouri Pacific and its predecessors of insurance coverage from the insurers for third-party liabilities. The policies in question were issued between 1959 and 1971.

In 1994, Missouri Pacific filed a declaratory judgment and damages suit against the insurers. In the suit, Missouri Pacific sought a declaration that it was entitled to indemnification from the insurers for claims by current and former employees of Missouri Pacific for hearing losses allegedly sustained as a result of long-term exposure to unsafe levels of noise while employed by Missouri Pacific.

The policies at issue in this case contain clauses the same as or similar to the one set forth below:

"This Policy shall only indemnify the Employer against his liability to pay compensation for *occupational disease in cases where the employees cessation from work as a result thereof first occurs during the period of insurance covered by this Policy.*" (Emphasis added.)

The policies at issue here do not set forth a definition of "occupational disease."

The insurers filed a motion for partial summary judgment on the grounds that (1) noise-induced hearing loss (NIHL) was an "oc-

cupational disease"; and (2) the polices in question limited coverage of occupational disease claims to claims falling under the "cessation from work" clause. In addition, the insurers sought a protective order to prevent Missouri Pacific from proceeding with certain discovery requests. Missouri Pacific had requested discovery on (1) the drafting and derivation of key policy terms, including "occupational disease" and the "cessation from work" clause as they pertained to hearing loss claims; (2) pleadings and other court documents in which the insurers took a position concerning the meaning of key policy terms; (3) marketing and promotional material concerning insurance coverage or the lack thereof for hearing loss claims; and (4) the factual bases for the insurers' affirmative defenses, including the "occupational disease" term.

The trial court granted the motion for a protective order, stating as follows:

"At this point in time, I think many of the requests for discovery are premature. I would prefer to—if I am going to impose that burden on the various Defendants, I would prefer to have at least the issues narrowed by the motion for summary judgment.

I can assure you that if there is a fact question that is raised by the Plaintiffs, that I will deny any motions for summary judgment, and I will order discovery to proceed as to those fact questions and any materials that are raised in any affirmative defenses."

Following argument, the trial court granted the insurers' motion for partial summary judgment, stating as follows:

"This is a case of first impression in the State of Illinois, obviously.

I don't believe that there is any issue of fact as to how noise induced hearing loss occurs in an individual.

I think the medical documents which were provided and the brief synopsis by counsel is certainly the generally accepted explanation of how noise induced hearing loss occurs.

But I believe that the question is not the medical definition of the disease, but it is the legal definition of an occupational disease.

And this being a case of first impression, as I stated, it is incumbent on the Court to look to how other Courts have defined noise induced hearing loss as an occupational disease within the context of an insurance coverage case.

I am not solely relying on other cases, although I think that they are very instructive.

But I believe that occupational diseases have been defined in many other employment contexts, Workers Compensation, OSHA,

all kinds of situations. But I believe that as a matter of law, noise induced hearing loss can be legally defined as an occupational disease, notwithstanding the fact that it may not meet the criteria for a medical disease."

The trial court also found that the "cessation from work" clause was unambiguous.

As part of its order, the trial court made a finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason for delaying the enforcement or appeal of the judgment. This appeal followed.

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp.*, 154 Ill. 2d at 102. In appeals from summary judgment rulings, the court conducts a *de novo* review. 154 Ill. 2d at 102.

■ The construction of an insurance policy's provisions is a question of law. *Outboard Marine Corp.*, 154 Ill. 2d at 108. In construing an insurance policy, the court must ascertain the intent of the parties to the contract. *Outboard Marine Corp.*, 154 Ill. 2d at 108. If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning. 154 Ill. 2d at 108.

■ Initially, Missouri Pacific points out that, in rendering its decision in this case, the trial court used the "legal definition" to define the term "occupational disease" instead of the "plain, ordinary and popular" meaning as required by the case law. However, taking the trial court's remarks in context, we believe that the trial court did in fact utilize the correct standard. In any event, since our review is *de novo*, we are free to accept or reject the definition arrived at by the trial court.

Missouri Pacific contends that the circuit court erred by deciding as a matter of law that NIHL is an occupational disease within the meaning of the policies at issue in this case. Missouri Pacific argues that NIHL is neither a disease nor "occupational" for purposes of construing these policies. Missouri Pacific maintains that NIHL is a traumatic injury caused by the physical impact of sound waves on the ear. In support of its argument, Missouri Pacific cites extensively from medical journals and treatises all of which support the conclusion that NIHL is caused by a physical injury rather than disease. Missouri Pacific also points to the affidavit of Robert Tivnan, a retired vice-president of an insurance company who brokered certain of the

policies at issue here, in which he stated that, in his experience, NIHL was not categorized as an occupational disease.

Missouri Pacific also relies on a number of cases from other jurisdictions in which NIHL is described as resulting from trauma or injury and not the result of disease. See *City & County of Denver v. Moore*, 504 P.2d 367 (Colo. App. 1972); *City of Orlando v. Lemay*, 652 So. 2d 850 (Fla. App. 1995); *Skowronski v. Ajax Forging & Casting Co.*, 54 Mich. App. 136, 220 N.W.2d 725 (1974); *Cisneros v. Molycorp, Inc.*, 107 N.M. 788, 765 P.2d 761 (N.M. App. 1988); *Belcher v. City of Hampton*, 1 Va. App. 312, 338 S.E.2d 654 (1986); *Peabody Galion Corp. v. Workman*, 643 P.2d 312 (Okla. 1982); *Hinkle v. H.J. Heinz Co.*, 462 Pa. 111, 337 A.2d 907 (1975). We note that these cases all arise in the context of workers' compensation actions.

Citing another workers' compensation case, Missouri Pacific further argues that NIHL is not occupational as it can arise from sources outside the workplace. See *Belcher*, 1 Va. App. at 316, 338 S.E.2d at 656 ("hearing loss *** is an ordinary disease of life suffered by much of the population for a variety of reasons, including but not limited to noise exposure both on and off the job, by gradual injury, by infection, and the aging process. Noise exposure is inescapably connected to modern living").

While these cases are informative, we question their relevancy to the issue before us, since they mainly involve interpretations of a state's particular workers' compensation statute rather than interpretations of insurance policies.

However, one case relied on by Missouri Pacific not arising in the context of a workers' compensation action is *Winkelman v. Boeing Airplane Co.*, 166 Kan. 503, 203 P.2d 171 (1949), and it requires careful review by this court. In that case, Winkelman brought a common-law action for damages against his employer based upon his loss of hearing while working at the employer's indoor pistol range from 1943 to 1944 and then one day in 1945. Winkelman testified that the pistol firing made his ears ring, but the ringing would then quit after a time; he did not know that it would permanently impair his hearing until the later part of 1945 or early in 1946. According to his medical expert, his condition was not a disease but the result of trauma caused by his employment.

The reviewing court held that Winkelman's loss of hearing was an accidental injury within the contemplation of the workers' compensation act. The decision was based in part on the court's determination that Winkelman's injury was "of traumatic origin." However, the reviewing court went on to state as follows:

"It also may be well to state we are not called upon in this case

to discuss the abstract questions whether deafness may be a disease or whether disease may be caused by trauma. Assuming traumatic deafness may be a disease, as it appears to be by some writers, the fact remains that here a portion of this man's physical structure was definitely broken down by accidental injury. For that injury recovery could have been had under our act. We think under such circumstances we would not be justified in denominating the injury solely and purely an industrial disease and thereby deny a workman recovery under our act. To deny recovery in this situation would not, in our opinion, constitute liberal, but strict and technical, interpretation of our act against a workman. Under our repeated decisions we are not permitted to give it such interpretation." *Winkelman*, 166 Kan. at 511, 203 P.2d at 176.

Missouri Pacific also relies on a workers' compensation case, *Belschner v. Anchor Post Products, Inc.*, 227 Md. 89, 175 A.2d 419 (1961), for the proposition that NIHL is not an "occupational disease." However, in that case, the employee had continued to work and the case turned on the interpretation of the Maryland statute. It did not turn on the distinction between a disease and an injury.

Most of the arguments raised by Missouri Pacific in this case have already been addressed and resolved adversely to it. In the case of *Norfolk & Western Ry. Co. v. Accident & Casualty Insurance Co.*, 796 F. Supp. 929 (W.D. Va. 1992), *aff'd in part & dismissed in part*, 41 F.3d 928 (4th Cir. 1994), the court was presented with the similar factual setting and resolved the same issues raised in this case. In that case, the railroad filed an action against the insurance companies who provided excess coverage for the years 1960 to 1986. The railroad filed a motion for partial summary judgment seeking a declaration, *inter alia*, that NIHL was a bodily injury. The insurance companies filed a cross-motion for summary judgment seeking a declaration that NIHL was an occupational disease. The policy at issue in *Norfolk & Western Ry. Co.* contained an almost identical clause regarding "occupational disease" and "cessation from work" as the one we are asked to interpret.

In determining that NIHL was an "occupational disease," the district court stated as follows:

"After closely examining the arguments that the parties and their affiants make, the court recognizes that any attempt that it would make to substitute its analysis for that provided by the medical experts would be futile. The futility of the attempt can be readily appreciated through even a brief consideration of the definitions quoted above. The application of these definitions to the court's understanding of the nature of NIHL leads the court to no justifiable conclusion in favor of either position. Ultimately,

the answer to the injury/disease question must come from an analysis of the parties' expectations with regard to the contract rather than the medical analysis provided by the parties and their affiants.

An examination of the authorities cited by the [insurance companies] in support of their position that NIHL is an occupational disease leads the court to conclude that whether a medical professional would consider NIHL to be an injury or a disease, the railroad had every reason to believe that NIHL fell into the category of occupational disease when it entered into the insurance contracts at issue in this case. The number and breadth of the sources which refer to NIHL as an occupational disease put the railroad on notice that its insurance contracts would be interpreted according to the premise that NIHL is an occupational disease. Any objectively reasonable railroad would contract from this premise. This being the parties' only reasonable expectation with regard to the issue, the court holds that, for the purpose of interpreting the policies at issue in this case, NIHL is an occupational disease." *Norfolk & Western Ry. Co.*, 796 F. Supp. at 935.

On appeal, the United States Court of Appeals for the Fourth Circuit affirmed the district court's determination, stating, "[t]he district court declared that noise-induced hearing loss is an 'occupational disease'. We agree with the district court." *Norfolk & Western Ry. Co.*, 41 F.3d at 931. The court went on to state that it had decided the same issue in a Jones Act case under the Federal Employers' Liability Act (FELA). See *Barger v. Mayor & City Council*, 616 F.2d 730 (4th Cir. 1980) (recognizing hearing loss from on-the-job noise as an occupational disease).

We have quoted extensively from the above case, because it addresses the majority of arguments raised by Missouri Pacific in this case and is thus dispositive of those arguments.

We are not persuaded by Missouri Pacific's citation to *Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Insurance Co.*, No. 94—CV—1464 (Kan. Dist. Ct. September 18, 1995). Like the present case, that case involved an insurance coverage dispute. In that case, the district court determined that noise-induced hearing losses were "accidents" relying on *Winkelman*. The district court rejected the insurance companies' characterization of the hearing loss as an "occupational disease." However, the court went on to state as follows:

"However, the Court is constrained to observe that even if such a characterization were valid, Insurors' [*sic*] argument based thereon would be moot. The subject contract language states, '[t]he words "bodily injury" as used in this policy shall be

construed to include but is not limited to mental injury, sickness, disease, disability ***.' Thus occupational diseases are *included* (emphasis in original) in coverage as a matter of contract. The case cited by Insurors [*sic*] in support of the proposition that NIHL is an occupational disease, and thus not covered, involved insurance contracts that specifically excluded occupational diseases from coverage. *Norfolk & Western Ry. Co. v. Accident & Casualty Insurance Co. of Winterthur. et al.*, 796 F. Supp. 929 (W.D. Va. 1992)." *Atchison, Topeka & Santa Fe Ry. Co.*, slip op. at 12.

Missouri Pacific maintains that *Norfolk & Western Ry. Co.* is distinguishable on its facts. It argues that the decision in that case was reached only after extensive discovery (*Norfolk & Western Ry. Co.*, 41 F.3d at 930), which Missouri Pacific has been denied in this case, and that, in the *Norfolk* case, the court did not hold that the plain and ordinary meaning of "occupational disease" includes noise-induced hearing loss.

Missouri Pacific's arguments are contradictory. On the one hand, the discovery that was the subject of the protective order related primarily to the information regarding the insurers' drafting and meaning of certain terms in the policies at issue. Yet, it also argues that in construing these terms the trial court was required to find the "plain and ordinary" meaning of the term "occupational disease." Thus the additional discovery it sought would have had a limited bearing on the question of the "plain and ordinary" meaning of the term "occupational disease."

Generally, words in a contract are to be given their usual and primary meaning at the time of the execution of the contract. *DuQuoin National Bank v. Vergennes Equipment, Inc.*, 234 Ill. App. 3d 998, 1003 (1992). Although the court in *Norfolk & Western Ry. Co.* did not use the term "plain and ordinary" meaning, it is clear that it utilized that concept when it determined that, due to the number of sources that had referred to NIHL as an occupational disease, the railroad was on notice that its contracts would be interpreted according to the premise that NIHL was an occupational disease. *Norfolk & Western Ry. Co.*, 796 F. Supp. at 935.

■ Missouri Pacific contends that the "cessation of work clause" contained in the policies at issue in this case confirms that NIHL is not an "occupational disease." Missouri Pacific argues that, since NIHL does not cause an individual to cease work as a result, NIHL is not an "occupational disease." *Belschner*, 227 Md. 89, 175 A.2d 419 (NIHL not an "occupational disease" because an employee could continue performing the same work); see also *Wilson v. Hart County Stone Co.*, 433 S.W.2d 649, 650 (Ky. App. 1968) (condition that did not

result in "cessation or curtailment of performance" was not "occupational disease"). However, neither of these cases is persuasive since they are limited to the interpretation of their respective workers' compensation statutes.

In *Norfolk & Western Ry. Co.*, the district court determined the "cessation of work" clause to be unambiguous. The district court then stated as follows:

> "The railroad's argument that the interpretation offered by the court swallows up the indemnity provision of the contract does not dictate a contrary result. The court is confident that the parties intended to swallow up the indemnity provision inasmuch as they intended to limit coverage with respect to occupational disease to claims which resulted in the claimant's cessation from work. Paragraph six [the same language at issue in the present case] is the product of what appears to the court to be entirely rational contracting. Like so many provisions, it limits coverage according to an arbitrary but objectively determinable criterion." 796 F. Supp. at 936.

We agree with the *Norfolk* court and the trial court in the present case that the "cessation from work" clause is unambiguous.

Based upon the above discussion, we conclude as a matter of law that NIHL is an "occupational disease" for purposes of the insurance policies at issue in this case. See also Burlington Northern R.R. Co. v. Aetna Casualty & Surety Co., No. 92—R—64 (Cir. Ct. St. Clair Co.) (holding NIHL is an "occupational disease").

Missouri Pacific contends that the trial court should have denied the insurers' motion for partial summary judgment in order to allow Missouri Pacific to obtain the discovery it had requested.

■ Initially, Missouri Pacific argues that summary judgment was improper because the insurers failed to provide a copy of the policies for the record, relying on *Anderson v. Dorick*, 28 Ill. App. 3d 225 (1975).

In *Anderson*, the reviewing court found that a motion to strike a motion for summary judgment should have been granted where the affidavit attached to the motion for summary judgment contained several technical defects. *Anderson*, 28 Ill. App. 3d at 227-28. However, we note that nothing in that case suggests that the mere absence of the contract would have been sufficient to strike the summary judgment motion.

In *Otis Elevator Co. v. American Surety Co.*, 314 Ill. App. 479 (1942), the reviewing court held that the failure to attach copies of a contract and other exhibits to an affidavit in support of a motion for summary judgment was not a basis for reversing the granting of a

motion for summary judgment in favor of the plaintiff. The court noted that some of the exhibits were attached to the complaint, while another had previously been delivered to the defendant. In addition, the plaintiff had notified the defendant that no copies of another exhibit were available but that the photostatic copy of the original was available for examination at any time in the plaintiff's attorney's office. *Otis Elevator Co.*, 314 Ill. App. at 481.

Missouri Pacific's amended complaint alleged that the insurers were already in possession of the policies, but, in any event, because the policies were voluminous, they were being kept at the offices of Missouri Pacific's counsel and would be made available upon request. There was no factual dispute over the language quoted from the policies in support of the motion for summary judgment, nor did Missouri Pacific argue that the failure of the policies to be physically present in the record somehow prevented a question of fact from being presented to the trial court that would have resulted in the denial of the motion for summary judgment.

We conclude therefore that the failure of the insurers to include copies of the policies for the record did not render the granting of the motion for partial summary judgment improper.

■ Extrinsic evidence is not admissible to demonstrate a meaning contrary to the terms of an unambiguous contract. *Lundberg v. Church Farm, Inc.*, 151 Ill. App. 3d 452, 460 (1986). Where the terms of an agreement are clear and unambiguous, it is error for the trial court to mandate discovery and allow in extrinsic evidence regarding the intent of the parties. *Jewel Cos. v. Serfecz*, 220 Ill. App. 3d 543, 549-50 (1991); see also *Norfolk & Western Ry. Co.*, 796 F. Supp. at 934 (additional discovery would not substantially add to the arguments in support of the opposing interpretation of the "occupational disease" and "cessation of work" clause of the policy).

There being no ambiguities in the policy provision at issue in this case, the trial court did not err in entering the protective order as to the discovery sought by Missouri Pacific.

We conclude that the trial court did not err in entering partial summary judgment for the insurers.

The judgment of the circuit court is affirmed, and the cause is remanded.

Affirmed and remanded.

DOYLE, J., concurs.

JUSTICE COLWELL, dissenting:

I respectfully dissent from the majority's holding. I believe the trial court abused its discretion when it granted the insurers' motion for partial summary judgment without allowing Missouri Pacific to obtain the discovery it had requested.

By focusing on how recent courts have ruled regarding NIHL and insurance policies in determining whether NIHL is, as a matter of law, an occupational disease, the majority has misconstrued the main issue in this case and a fundamental tenet of insurance law.

The rule in Illinois is that terms in an insurance policy must be accorded their plain and ordinary meaning. *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116, 122 (1994). The "plain and ordinary meaning," however, is construed *at the time of the execution of the contract*. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09 (1992) (looking at what each party intended "damages" to mean when contract signed). Indeed, when construing an insurance policy, a court must determine the intent of the parties to the insurance contract. *Outboard Marine Corp.*, 154 Ill. 2d at 108.

Accordingly, whether NIHL is currently viewed as an occupational disease is irrelevant in the analysis of the present case. Instead, the issue here is whether Missouri Pacific and the insurers *intended* NIHL to be considered an occupational disease when the policies were administered. Obviously, when looking for each party's intent, it is necessary to look at what both Missouri Pacific and the insurers knew about NIHL when the policies were issued.

The documents Missouri Pacific wishes to discover will serve this purpose. The purposes of litigation are best served when each party knows as much about the controversy as is reasonably practical. *Cole Taylor Bank v. Corrigan*, 230 Ill. App. 3d 122, 126-27 (1992). The objectives of pretrial discovery are to enhance the truth-seeking process, to enable attorneys to better prepare and evaluate causes, to eliminate surprises, and to ensure that judgments rest on the merits of the case—not upon the skillful maneuvering of counsel. *Mistler v. Mancini*, 111 Ill. App. 3d 228, 231-32 (1982). Indeed, discovery is not a tactical game used to obstruct the opposing litigant. *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 282 (1982). Instead, discovery procedures were designed to be flexible and adaptable to the infinite variety of cases and circumstances appearing in the trial court. *Mistler*, 111 Ill. App. 3d at 232. To limit unduly their scope would thwart the administration of justice. *Mistler*, 111 Ill. App. 3d at 232. Therefore, summary judgment should be denied if it appears from the record that the nonmoving party requires additional discovery to respond. See 145 Ill. 2d R. 191(b) (the need for additional

discovery precludes the granting of summary judgment); *Cole Taylor Bank v. Corrigan*, 230 Ill. App. 3d 122, 126-28 (1992); *Dobbs v. Safeway Insurance Co.*, 66 Ill. App. 3d 400, 402-03 (1978). Our review of the trial court's entry of summary judgment is *de novo. Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701 (1996).

Because additional discovery is needed regarding the insurers' intent at the time they issued the policies, we should reverse the trial court's entry of summary judgment. Missouri Pacific requests documents that will give direct insight as to what the insurers intended by the term "occupational disease." For example, Missouri Pacific seeks the insurers' documents concerning the drafting and derivation of the term "occupational disease," as well as the insurers' marketing and promotional material concerning insurance coverage for occupational diseases. These documents bear directly on what the insurers intended by the term "occupational disease" when they issued the policies to Missouri Pacific.

The majority erroneously relies on *Norfolk & Western Ry. Co.* to show that the railroad should have known that NIHL was an occupational disease. Quoting *Norfolk*, the majority states:

> " 'The number and breadth of the sources which refer to NIHL as an occupational disease put the railroad on notice that its insurance contracts would be interpreted according to the premise that NIHL is an occupational disease.' " 286 Ill. App. 3d at 136, quoting *Norfolk & Western Ry. Co.*, 796 F. Supp. at 935.

The record shows, however, that, in the period the policies were administered, NIHL was *not* considered an occupational disease.

Instead, when the policies were issued, NIHL was commonly deemed to be an injury. For example, Missouri Pacific's appellate brief points out that the Illinois Workmen's Occupational Disease Act excluded NIHL from 1951 (its initial passage) through 1975. Rhode Island did not define NIHL as an occupational disease until 1969. New Jersey did not define NIHL as an occupational disease until 1979. Moreover, 18 other states defined the term "occupational disease" to include only a limited number of specified conditions for the period 1959 to 1971. NIHL was absent from these lists. Finally, Missouri Pacific lists numerous other sources in its brief which all report that NIHL was considered a "trauma," not a disease, throughout the 1960s and early 1970s. Consequently, *regardless of whether NIHL is considered an occupational disease today*, it is entirely probable that at the time the insurers entered into contracts with Missouri Pacific NIHL was not considered an occupational disease in accordance with the terms of the policy.

I do not discount the possibility that the requested documents may not show the insurers' intent, or that they will show that both parties understood NIHL to be an occupational disease. However, it also is equally likely that these documents will show that up to a certain point in time, perhaps even 1971—the date the last policy was issued—the insurers did not intend NIHL to be covered under the occupational disease clause. As a result, a decision cannot be made that NIHL is, as a matter of law, an occupational disease under this insurance contract until such documents are discovered and reviewed by Missouri Pacific.

For these reasons, we should reverse the trial court order granting the insurers' motion for partial summary judgment and remand the cause to the trial court to allow Missouri Pacific to obtain the discovery it has requested.